Our final case for this morning is United States v. Edward Velazquez. Mr. Hillis. Good morning. May it please the Court. My name is Daniel Hillis. I'm with the Federal Public Defender's Office. Could you speak up, please? Yes, sir. My name is Daniel Hillis. I'm with the Federal Public Defender's Office, and I represent Mr. Velazquez. Mr. Velazquez raises three issues on appeal. First is a two-part effort here with regard to the right to have counsel. And to begin with, there was a structural error when the District Court refused to allow retained counsel, with whom Mr. Velazquez stopped communicating, to withdraw from the case. But was it really a – there's a time when – I guess you're talking about Mr. Marcus, right? Yes. Certainly there's a time when he's – that he's seeking permission to withdraw. The judge says, I'm not giving you leave now. But then later on, it seems that there's some rapprochement between Mr. Marcus and Mr. Velazquez. And in the end, things seem not to be so bad. I don't know if that's quite the case, Your Honor. Certainly there's a valid pending motion to withdraw. And the passage of time does nothing to blunt the effect of that motion. There is the motion, but, I mean, isn't Mr. Marcus reporting back to the court that, you know, we're talking again and we've met and things that make it seem, as the judge obviously hoped, that maybe there would be enough of a relationship to make this work? There is communication, but there's nothing that suggests definitively that Mr. Marcus was someone who Mr. Velazquez wished to have as his counsel going forward in the case. Well, it was hard to get definitive information from the defendant, wasn't it? That's a problem that goes to the second part of my argument, Your Honor, with respect to what should have happened. And to get the definitive information, there should have been a hearing on the motion to withdraw. But we didn't have that either. But how could you get Mr. Velazquez to cooperate in such a hearing when he's so uncooperative in other respects? The record does indicate some lack of cooperation. That's a nice way to put it. Well, we only have the perspective of those individuals who testified against Mr. Velazquez. We don't have Mr. Velazquez. Well, we've got evidence that it took a real physical effort to get him to court in one instance, and that suggests to me that there's an ability to bring him into court in a second instance. But he was all bruised up. The judge didn't want to do that. And then at the final event, the marshal testifies that he's refusing to come. I mean, you can waive your right to be there. And it has to be a knowing and voluntary decision, which there was not here. And so he's banged up, he's bruised at that hearing. Then he suggests that he will come voluntarily at a future time. He does not appear. We have statements from the marshals. I've raised some concern about the inquiries when you have a represented individual about whether he's wishing to come, the inferences, and rather the information that's gathered from him under those circumstances. I think that's best avoided. Can I just ask you, though, what are we to make in this broad picture of these things that he's filing at the same time? The government appended some of them to his brief. I mean, these do not strike me anyway as the filings of somebody who's trying to be cooperative. They remind me of sovereign citizens and people who think the UCC has something to do with whether you show up in court. I mean, it's evidence, it seems, that the district judge could have relied on in conjunction with everything else he has to suggest Mr. Velazquez just doesn't want to cooperate. I think there's every reason to believe from those filings that Mr. Velazquez has problems with the legitimate authority of the court. But I don't think that does anything to relieve the court of its responsibility to make an adequate record or an appropriate determination about his willingness to appear. We have a motion. There should have been a hearing on the motion. We have the structural error problem, which I believe still exists. I respect Your Honor's inquiries on these topics. But nevertheless, we have a right to chosen counsel. There is some communication between these individuals. Mr. Velazquez is able to afford counsel at this point. I'm not sure of his current financial predicament. But in any event, he has that right. It's not given to him. He then has a right to a hearing. I believe under this court's jurisprudence and zilgas that there should have been a hearing. Holloway v. Arkansas, the United States Supreme Court decision on this. None of these things happen. So whether there's structural error or whether there is an abuse of discretion, I think in either event there's a problem about the way that he was not allowed to have counsel of his choice. Unless Your Honors have questions for me, I'd like to move on to the second portion of the argument because I believe that the court understands the arguments and the rest of the material in my brief, I believe, fills any of the additional questions that the court may have. But secondly, the district court erred when it sentenced Mr. Velazquez in absentia. And here again, we have a problem. In the brief, we pointed to the possibility of videoconferencing. I wish to draw the court's attention to its own decision in Thompson. I don't know that we could validly use a videoconferencing procedure here for a person who is in custody and therefore is not voluntarily absent under the decision in Akbani and the other authorities that we cite. This is an individual, again, should have been brought to court. And we don't rely on individuals to make the decision whether to come to court themselves when they are in custody. And that would hold true also for the correspondences from Mr. Velazquez to the court. But it's a tough question. You're really saying that, in a sense, he has to be bound up and put in a straitjacket and dragged in. And I'm not sure that's the law. He's told you have your court appearance today. The marshal is put under oath and testifies and says he doesn't want to come. The judge has made the decision that he doesn't want to literally drag him into the building, as he had had to do on that other occasion. And there's a concept that you can waive your right to be present. So I think adding all of that up, how can the judge have misassessed the situation? The judge should have had Mr. Velazquez there is still my point. Do you think no matter how, you know, like put a dart in him or something? I mean, I don't. I struggle with the idea that an individual who would be arrested would have a choice not to be arrested and brought to jail, much like an individual who is required to go to court wouldn't be brought to court. It's tough getting somebody out of their cell when they don't want to come out. The evidence was there in vivid person that he had forcibly resisted coming to court previously. Why would it be any different? To that I would say two things, Your Honor. First of all, at that hearing where he was brought in and he was in some physical distress, he said that he would voluntarily come or suggested that he would voluntarily come. Then his lawyer met with him, and he said of record he believed that his client would be present at that hearing. We had contrary information from the marshals, but there should have been more done. There should have been more of an inquiry. Well, a copy of the minute order went directly to the defendant, and then he sends it back, doesn't he, or a copy of it back with all these sorts of things written? I know his directive that he receive it, but it's thorny. He's nevertheless supposed to be present, and I don't believe that under this record we can say that he has affirmatively waived, that he's voluntarily and intelligently waived his right to be present. And he had that right under Rule 43. It says that he has to be there. The way that he gets there is troublesome, but nevertheless, this is what the rule requires and due process requires. So these drag orders just ought to be automatic, that the person's drugged to court regardless? I've not been familiar with the drag order prior to seeing this case. Nor was I. But in any event. And I was familiar that there's the occasional person who's so disruptive in the courtroom that that person can't be there. And there have to be findings made to that effect, and that's not the case here. And briefly, if I can just comment on my third argument and save the balance of time for my rebuttal, but the district court erred when it failed to consider a principle mitigating argument in the form of Mr. Vlaska's cooperation. He proffered extensively on multiple days. That never made it into the analysis, rather, for the 3553A determinations that the district court must do, and it can't pass in silence per Cunningham. I reserve the balance of my time. Okay. Very good. Thank you. Mr. Hayes? Good morning. May it please the Court, I'm Brian Hayes representing the United States in this matter. Your Honor, there's nothing in the text of Rule 43 that prohibits a court from concluding that a defendant in custody cannot choose to be voluntarily absent. And it would make little sense to view the rule as compelling a district court judge to put law enforcement employees and the defendant at risk by forcibly bringing a defendant who is voluntarily chosen not to be present to court for a sentencing hearing. And I think the record in this case demonstrates that there's no doubt that the defendant voluntarily chose not to be present on this case. Haven't we said before, though, that a person in custody cannot be voluntarily absent? That was a statement in Akbani. But in Akbani, custody was not at issue because that was a case involving flight. And, in fact, the case that the Seventh Circuit cited in Akbani for that statement actually was a case where the other circuit said that a defendant in custody, I'm sorry, they would not rule out the possibility that a defendant in custody could choose to be voluntarily absent. But, of course, the difference with a lot of these things is the person may not be in the courtroom, but they take them, you know, to a room in the jail or a room in the courthouse where they're not going to disrupt everybody else, and they're there by video, or they can at least watch what goes on. They are present, and whether that's a full substitute obviously is another issue, but at least it's not the same as simply being in absentia, which is what happened here. That's correct, but I don't think that there's anything in the rule or in the case law that would require the district court to undertake that step. So I don't think that the district court erred here, particularly when we have filings from the defendant on his own. The defendant was an individual who was not afraid, certainly, to take matters into his own hands, and he repeatedly filed documents indicating that he did not recognize the authority of the court, that he did not have any desire to participate in the proceedings because he didn't think the court had any business judging him. And so it seems to me under that circumstance it would not be an error for the court to conclude this individual who was warned personally, who has informed a marshal today that it's his choice not to attend, that the court would go ahead and maintain control of his courtroom and go ahead and do the sentencing that day as the court had indicated it would do. Before you get on to whatever else you're going to talk about, there is also this issue that we're dealing with retained counsel. We're not dealing with appointed counsel. And he is asking to change retained counsel. Well, the Supreme Court has treated that differently. Why does this 18-month pending motion, certainly it's not a motion that's filed at the last minute, it's the opposite, languishes around there for 18 months. Why shouldn't that have been granted and he given the option to get a different lawyer at his own expense? Well, during that 18-month period, Mr. Marcus and the defendant actively urged the court not to act upon it. And I think it's not unfair at all to view that motion as having been effectively withdrawn and it was not raised again by the defendant or defense counsel, Mr. Marcus, until it was apparent that the sentencing was going to happen that day. All indications were there were some fits and starts certainly, but all indications were that the defendant and his counsel were continuing to communicate. In fact, Mr. Marcus said on the day of the sentencing that he had seen the defendant earlier in the week and had met with him. And so I think the district court reasonably took the position that these people don't want to be separated for whatever reason. He's not looking for a substitution. As I stated before, the defendant was not a person who was shy about making his opinions known, and there's nothing in his pro se filings in which he says, I want this attorney to represent me, or I want the court to rule on my motion for a new counsel. But why should the court have even initially not given Mr. Marcus permission to withdraw? I don't know. I mean, it's troubling to me, given that we're talking about retained counsel. Well, I think in this instance, Judge, number one, you have the district court taking into account the history of Mr. Velasquez's behavior. When he decided he didn't want to stand trial, he fled. He then pled guilty. When he decided he didn't like his plea agreement anymore, he started filing these conspiracy papers indicating that everybody had conspired to trick him into pleading guilty. Now we've got this motion to withdraw, and I think just as a practical matter, it's not something I can present in the record here, but motions to withdraw are not uncommon, and it's frequent that with a little prodding from the district court or questioning by the district court that the defendant and the attorney work things out, and that's what appeared to happen here. As I said, it appears that they had a rocky relationship, but it did seem to have been repaired, certainly from Mr. Marcus's perspective. It wasn't until he found that the sentencing here was going to go forward, when he was surprised by his client not coming over, that he sought to withdraw. That motion was effectively tabled. But there's this complaint by the defendant's wife against Marcus as well, somewhere along the line. That's something there's nothing in the record about until, once again, the day of the sentencing hearing. Mr. Marcus did go and confer with the common law wife who was present, and that prompted him to inform the court. I didn't mention that there is this complaint filed by the defendant's wife. I don't know that that's something that necessarily says that there's going to be a conflict. He says it created a conflict of interest for him and would be part of the case. I think he said it may somewhat present a conflict. But once again, this is all sort of dumped at the court's feet when the court decides this is the day of sentencing. So I think the court was reasonable in deciding that the defendant has told me what he wants to hear, what he wants the court to hear, and that's that I have no jurisdiction and that he's not going to participate. And so here we are, five months after the case was indicted. I'm sorry, five years after the case was indicted, months and months and months after a PSR was prepared. I warned the defendant this was the day we were going to sentence him if he didn't appear again. And so we're going to do that now. And I think the court is in its rights to do that. I'll just briefly, since I have a little bit of time left, talk about the principal argument. I think that in the words or sort of in the words of Castaldi, this is not a case where there was an error of oversight in terms of addressing that mitigation argument. I think if one pays close attention to the context and practical realities of the hearing here, as Castaldi puts it, the court was clearly well aware that the defendant had attempted to cooperate at some time after he had absconded. And the court very clearly put on the record that in the court's view, the post-charge conduct was an aggravating factor. So the court, am I remembering correctly, gives him both acceptance of responsibility and obstruction? Yes. Yes, so this is one of those unusual cases where it goes down and then back up again. That's correct. So it was something that the court clearly was cognizant of and just felt in the end, though, that the post-charge conduct was aggravating rather than mitigating and chose a sentence within the guideline range. So we have nothing further? No, apparently not. So thank you very much. Thank you. Anything further, Mr. Hillis? I think it's important that we don't conflate the notions of acceptance with cooperation.  And under 3553A, the cooperation had to be considered. And under Gall, I'll point to that, instead of Gestalt, it should have been specifically accounted for. As for counsel, an individual doesn't have to identify a substitute counsel in order to make the request valid. The request was made here, and as a prudential matter, a practical concern. If a district court is of the view that things can be worked out, if you just give a counsel an opportunity to speak to his client and tell the client to be reasonable, maybe it would have been reasonable for this court in this instance to send this attorney over to MCC, which wasn't far away, to adjourn and say, Comrades, you're going to be dragged back over here again. Look what happened last time. Let's not do that again today. You're going to aggravate this judge. There are things that could have been done differently than how they happened here, and everything could have turned out better. So for the reasons that we have said in our brief, we ask this court to reverse with respect to the various issues that we've raised and to remand. Thank you. All right. Thank you.  I'm with the Federal Public Defender's Office. We thank you very much for your assistance. Also, thanks to the government. We'll take the case under advisement, and the court will be in recess.